[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ORDERS
1. Motion #143 for Modification of child support is granted. There has been a substantial change of circumstances in that defendant has been unemployed for the most part since the end of June 2002.
The court finds the plaintiffs earning capacity to be $15,000 per year.
Based on defendant's current income of $438 per week from unemployment compensation, the child support order shall be $132 per week effective September 1, 2002 pursuant to the child support guidelines. An arrearage of $2,210 is found to be due and owing at this time (i.e. 9 weeks at $248 = $2,232 + 4 weeks at $132 = $528 less $550 in payments = $2,210). Said arrearage to be paid at the rate of $13 per week. Total payment for current child support and arrearage is now $145 per week. Said amount to be paid by way of an immediate wage withholding order through the State Disbursement Unit unless the parties agree in writing to a contingent wage withholding order. Child Support Guidelines Worksheet attached hereto.
The plaintiff shall continue to be responsible for the first $100 per year, per child of the unreimbursed medical and dental expense. The defendant shall pay 40% of the amount in excess of $100 per year, per child. The defendant also shall pay 40% of the work-related childcare expense incurred by the plaintiff.
The defendant shall provide the plaintiff with a written accounting of all income received for the preceding month on the 10th of each month starting November 10.
In the event the father finds full-time employment or part-time employment, he shall notify the plaintiff in writing within 48 hours.
The court also finds that there has not been a change in circumstances regarding the custody and access schedule since it was last addressed by CT Page 13203 the court on July 10, 2000 (pleading #127) warranting a downward deviation in child support. The court further finds that the current access schedule for the defendant father does not warrant a downward deviation in child support.
2. Motion #144 for Contempt for failure to pay child support. The defendant is found in wilful contempt of the child support order. Arrearages and payment of arrearages are as set forth in paragraph 1 above.
3. Motion #146 For A Specific Visitation Schedule Post-Judgment Pick-Up And Drop Off.
Denied. The court finds no credible basis in the testimony before it to change the pick-up and drop-off procedure.
4. Motion #147 for Contempt Post Judgment Drawing Children Into Adult Issues.
Denied. Both parties are behaving poorly toward each other resulting in the children being adversely affected by their conduct. The court finds that the plaintiff mother did not intend to harm the father's relationship with the children when she mentioned his unemployment.
5. Motion #152 for Contempt Post Judgment Child Visitation regarding July 2002.
Denied. Defendant's complaint makes no sense. He had the children overnight the Wednesday before her week with the children and overnight the Wednesday after her week with the children. His request to have the children overnight on Wednesday in the middle of her exclusive summer week and then file a contempt motion when she said no borders on the ridiculous.
6. Motion #153 for Family Evaluation Post Judgment Psychiatric and
Objection #151 to Motion for Family Evaluation Post Judgment Psychiatric.
Motion denied; objection sustained; except as addressed in paragraph 9 below. The court finds that dragging the children through a psychiatric testing and evaluation of them and their parents would be harmful to the children at this time. If the parents continue to battle with each other on custody, access and child-related issues, a psychiatric testing and evaluation of the parents only might be warranted. CT Page 13204
7. Emergency Motion #156 to Modify Visitation Schedule filed by Guardian Ad Litem.
Denied. The court finds that it does not have enough information to properly act on this motion and it is denied without prejudice. The GAL based her recommendation in part on a discussion with the children on September 9, 2002. School had been in session only 2 weeks at most at the time. The school records and the testimony of the teacher from Glastonbury did not bear out the concerns raised in the motion. The court does note that the parents have diametrically opposed opinions on the issue and their views have been considered. The court also reviewed the Family Relations evaluation that was marked as an exhibit at the hearing. Although that evaluation was completed back on April 22, 2002 while the defendant father still resided in Madison, it supported a return to the weekend, mid-week schedule that was agreed to and ordered on July 10, 2000 when and if the defendant father relocated within 20 minutes of the children. That has happened in that he now resides in Glastonbury within 5 minutes of the children and the parties have in fact resumed the schedule agreed to and ordered on July 10, 2000.
8. Motion #138 for Retainer of Guardian Ad Litem and Courts further orders regarding payment of GAL's fees in connection with these proceedings.
Granted. The fees of Diana R. Esposito, Guardian Ad Litem for the minor children, in the amount of $6,277.50 are found to be fair and reasonable. The plaintiff shall pay $2,511.00 and the defendant shall pay $3,766.50 to Diana R. Esposito within 45 days.
9. In connection with Motions 146, 147, 152, 153 and 156 the court orders the parties to enroll in a program designed to help them deal with the hostility and conflict they have encountered in connection with communication, visitation, extracurricular activities, holidays and new spouses. The Beacon Behavioral Services (Peace Program) run by Drs. Liza Thayer and Jeffrey Zimmerman out of Glastonbury or other similar programs are suggested to the parties. The costs shall be born equally by the parties.
10. This matter is continued to December 19, 2002 to monitor the defendant's efforts to find employment and for a status conference on the parties' efforts to enroll in the program ordered in no. 9 above.
Kenefick, J.
[EDITORS' NOTE: COMMISSION FOR CHILD SUPPORT GUIDELINES WORKSHEET IS ELECTRONICALLY NON-TRANSFERRABLE.] CT Page 13205
[EDITORS' NOTE: This page is blank.] CT Page 13206